UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MATTHEW MULDOWNEY, individually and on
behalf of all those similarly situated,

        Plaintiff,

  -v-                                  5:18-CV-1057

MERIT RECOVERY SYSTEMS, INC.,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

BARSHAY SANDERS PLLC           CRAIG B. SANDERS, ESQ.
100 Garden City Plaza               DAVID MICHAEL BARSHAY, ESQ.
Suite 500
Garden City, NY 11530

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

On February 12, 2018, plaintiff Matthew Muldowney ("plaintiff" or "Muldowney"), individually and on behalf of all those similarly situated, filed this putative class action against defendant Merit Recovery Systems, Inc. ("defendant" or "Merit") alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. Currently pending is plaintiff's motion for default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure. Muldowney seeks a judgment as to liability, damages, costs, and attorney's fees.

## II. BACKGROUND

### A. The Complaint

The claims in plaintiff's complaint arise out of defendant's written attempt to collect a debt owed by plaintiff. The debt Muldowney incurred was primarily for personal medical services. Sometime after plaintiff incurred the debt, he fell behind on payments owed. Thereafter, the debt was assigned or otherwise transferred to Merit. In an effort to collect the debt, defendant contacted plaintiff by letters dated March 26, 2018 and April 18, 2018.

The March 26, 2018 letter listed an amount of $70.00 due to Crouse Hospital, and included "Debtor #: 124400." See Compl. Ex. 1. The letter stated:

> YOUR ACCOUNT WITH THE CLIENT LISTED ABOVE HAS BEEN TURNED OVER TO OUR OFFICES FOR IMMEDIATE HANDLING. WE HAVE BEEN AUTHORIZED TO WORK WITH YOU DIRECTLY TO RESOLVE THIS OBLIGATION. THIS ACCOUNT IS SERIOUSLY PAST DUE. . .
>
> UNLESS YOU NOTIFY THIS OFFICE IN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THE DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THIS DEBT IS VALID. IF YOU NOTIFY THIS OFFICE IN WRITING IN 30 DAYS FROM RECEIVING THIS NOTICE, THIS OFFICE WILL: OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGEMENT AND MAIL IT TO YOU. WE WILL ALSO PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT CREDITOR.
>
> THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

The letter included a space where the debtor could fill out his or her credit card information to make payment.

The April 18, 2018 letter was identical; it listed an amount of $70.00 due to Crouse

Hospital, included "Debtor #: 124400," and contained the same language as the March 26, 2018 letter. See Compl. Ex. 1.

Neither letter provided a date of service nor itemization of the balance.

Muldowney alleges defendant violated 15 U.S.C. § 1692g because its collection letter was confusing from the perspective of the least sophisticated consumer. He contends that due to the language in both letters coupled with the lack of date of service and lack of itemization, he was unable to determine what the alleged debts represented. Compl. ¶ 26. Further, he was: unsure whether the two letters concerned a single debt or multiple debts, id. ¶ 27; confused and uncertain as to what the letters represented, id. ¶¶ 30–31; unable to determine the amount of the debts, id. ¶ 32; unable to identify the debts, id. ¶ 33; and his ability to determine the true amount of the debts and identify the debts was impaired, id. ¶ 34.

Plaintiff also contends Merit violated 15 U.S.C. § 1692e when it used false, deceptive, or misleading representations or means in connection with attempting to collect his debt. According to Muldowney, the letters are reasonably susceptible to have two or more meanings, one of which is inaccurate: the least sophisticated consumer could read the letters to mean they were for a single debt, Compl. ¶ 53, but the least sophisticated consumer could also read the letters to mean they were for multiple debts, id. ¶ 54. As one of these reasonable interpretation of the letters must be false, Muldowney contends it follows that the letters are deceptive within the meaning of the statute.

### B. Procedural History

Plaintiff commenced this action on September 4, 2018 seeking to recover for violations of the FDCPA. A summons was issued as to defendant on September 5, 2018.

The summons was returned executed on November 6, 2018, indicating service had been completed on October 29, 2018. Defendant's answer was due on November 18, 2018, but defendant failed to appear or answer. A Clerk's Certificate of Default was requested on November 27, 2018 and issued November 29, 2018. Plaintiff then moved pursuant to Federal Rule of Civil Procedure 55 seeking a judgment as to liability, statutory damages, and costs and attorney's fees.

### III. **DISCUSSION**

Generally, "Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant." United States v. Carpineta, No. 14-CV-0517, 2015 WL 500815, at *1 (N.D.N.Y. Feb. 5, 2015) (Kahn, J.) (internal quotations omitted). "First, under Rule 55(a), when a party fails to plead or otherwise defend . . . the clerk must enter the party's default." Id. (internal quotations omitted). "Second, under Fed. R. Civ. P. 55(b)(1), upon request of the plaintiff, a default judgment may be entered by the clerk when (1) the plaintiff's claim against the defendant is for a sum certain, (2) the plaintiff has submitted an affidavit of the amount due, and (3) the defendant has been defaulted for failure to appear." Id. (internal quotations omitted).

#### A. **Liability**

"When a default is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability." Bravado Int'l Grp. Merch. Servs. v. Ninna, Inc., 655 F. Supp. 2d 177, 188 (E.D.N.Y. 2009) (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)). However, "before entering default judgment, the Court must review the Complaint to determine whether Plaintiff has stated a valid claim for relief." Wells Fargo Bank, N.A. v. Barnes, No.

3:16-CV-533, 2018 WL 6028050, at *5 (N.D.N.Y. Nov. 16, 2018) (Sannes, J.) (citing Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009)).

Congress enacted the FDCPA to eliminate "abusive practices in the debt collection industry, and . . . to ensure that 'those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.'" Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 89 (2d Cir. 2008) (quoting 15 U.S.C. § 1692(e)). The FDCPA focuses on regulating interactions between "debt collectors" and "consumers." Muldowney is an individual who is a citizen of the State of New York and is a "consumer" as defined by 15 U.S.C. § 1692a(3). Merit is regularly engaged, for profit, in the collection of debts allegedly owed by consumers and is therefore a "debt collector" as defined by 15 U.S.C. § 1692a(6). Plaintiff's alleged debt was primarily for personal, family, or household purposes and is therefore a "debt" as defined by 15 U.S.C. § 1692a(5). Sometime after the incurrence of the debt, but before the initiation of this action, Muldowney is alleged to have fallen behind on payments owed on the debt. Merit's written correspondence dated March 26, 2018 and April 18, 2018 are "communication[s]" as defined by 15 U.S.C. § 1692a(2). Thus the only question is whether defendant engaged in conduct constituting a violation of the FDCPA.

Plaintiff alleges defendant violated § 1692e and §1692(g) of the FDCPA. Section 1692e establishes a general prohibition against a debt collector's use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The section includes a non-exhaustive list of prohibited conduct, including "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." § 1692e(10).

Section 1692g(a) sets forth required disclosures for a debt collector's initial communication to a consumer. Section 1692g, "Validation of debts," was enacted to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 134 (2d Cir. 2010) (internal quotations omitted). Unless set forth in the debt collector's "initial communication" with the consumer, the debt collector must send the consumer a written "validation notice" within five days of the initial communication. The validation notice must contain:

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

To determine whether a communication violates the FDCPA, courts apply an objective test based on the understanding of the "least sophisticated consumer." Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62 (2d Cir. 1993). According to the Second Circuit, the

"least sophisticated consumer" standard is "an objective analysis that seeks to protect the naive from abusive practices while simultaneously shielding debt collectors from liability for bizarre or idiosyncratic interpretations of debt collection letters." Greco v. Trauner, Cohen & Thomas, LLP, 412 F.3d 360, 363 (2d Cir. 2005) (internal quotations and citations omitted). The Second Circuit has emphasized that "even the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." Id. (internal quotations omitted). Thus, a communication is considered false, deceptive, or misleading to the "least sophisticated consumer" only if it is "open to more than one reasonable interpretation, at least one of which is inaccurate." Easterling v. Collecto, Inc., 692 F.3d 229, 233 (2d Cir. 2012).

As an initial matter, it is noted that plaintiff's submissions are of little assistance. The majority of the argument provided is directed largely to the reasons why Muldowney is entitled to the maximum amount of statutory damages and attorney's fees. While plaintiff has parroted the statutory language and alleged that the letters at issue were confusing and constitute violations of the FDCPA, he has not provided any caselaw supporting his position.

The Court would be remiss not to share its skepticism regarding plaintiff's version of the "least sophisticated consumer." The Court questions whether such a consumer could seriously be confused by these two letters, both of which include the information required to be in a validation notice pursuant to § 1692g(a). After all, even the least sophisticated consumer is not "a dolt." Ellis, 591 F.3d at 135. Nor has plaintiff provided or the Court discovered any statutory language or precedent requiring that a debt collection letter contain a date of service or an itemization of the balance. Though such specifics would certainly be helpful to a debtor, the lack thereof is not a *per se* violation of the FDCPA. Despite these

reservations, and faced with the lack of any argument in opposition, plaintiff's allegations must be accepted as true and all reasonable inferences drawn in his favor for purposes of this motion.

Plaintiff has sufficiently alleged a violation of 15 U.S.C. § 1692e by alleging that the least sophisticated consumer would be confused by defendant's two letters, namely that after receiving the letters, he was: unsure whether the two letters concerned a single debt or multiple debts; confused and uncertain as to what the letters represented; unable to determine the amount of the debts; unable to identify the debts; and his ability to determine the true amount of the debts and identify the debts was impaired. Accordingly, these allegations, if true, establish that defendant violated 15 U.S.C.§ 1692e.

Muldowney has also sufficiently alleged a violation of 15 U.S.C. §1692(g) by alleging that from the least sophisticated consumer's perspective, the letters are reasonably susceptible to have two or more meanings, one of which is inaccurate. Therefore, these allegations, if true, establish that defendant violated 15 U.S.C. § 1692(g).

Accordingly, plaintiff's motion for a default judgment on the first and second causes of action will be granted. Damages must now be considered.

### B. Damages

"While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). "[E]ven upon default, a court may not rubber-stamp the non-defaulting party's damages calculation, but rather must ensure that there is a basis for the damages that are sought." Overcash v. United Abstract Grp., Inc., 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008) (Sharpe, J.). "The

burden is on the plaintiff to establish its entitlement to recovery." Bravado Int'l, 655 F. Supp. 2d at 189.

"While the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Id. at 190 (internal quotations omitted). In order to establish its entitlement to the damages claimed, a plaintiff must submit specific documentary evidence sufficient to "ascertain the amount of damages with reasonable certainty." United States v. Linn, No. 10-CV-5289, 2011 WL 2848208, *2 (E.D.N.Y. July 14, 2011).

As to damages, plaintiff's attached documents and attorney declaration are sufficient to establish damages owed.

Section 1692k of Title 15 of the United States Code provides, in pertinent part, as follows:

> (a) Amount of damages
>
> Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of –
>
> . . .
>> (2)(A) in the case of any action by an individual, such additional damages [in addition to actual damages] as the court may allow, but not exceeding $1,000;
>
> . . .
>
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1692k(a)(2)(A), (a)(3).

### 1. Statutory Damages

In this case, plaintiff seeks "additional damages," also referred to as statutory damages, in the amount of $1,000.00, the maximum amount a court may award under § 1692k(a)(2)(A).

"[T]he FDCPA permits, in the court's discretion, an award of statutory damages upon proof of a violation, without regard to whether the victim of the violation suffered any pecuniary loss as a result of the violation." Lapan v. Greenspoon Marder P.A., No. 5:17-CV-130, 2018 WL 1033224, at *4 (D. Vt. Feb. 22, 2018) (citing Clomon v. Jackson, 988 F.2d 1314, 1322 (2d Cir. 1993)). "The decision on whether to award additional damages and on the size of any such award is committed to the sound discretion of the district court." Clomon, 988 F.2d at 1322 (internal quotations omitted). However, the "[t]he district court must . . . consider the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the extent to which such noncompliance was intentional, and other relevant factors in deciding the amount of any 'additional damages' awarded." Id. (quoting 15 U.S.C. § 1692k(b)).

In this case, Muldowney alleges Merit sent two confusing debt collection letters. As this is a motion for a default judgment, defendant is deemed to have admitted these allegations. However, two confusing letters sent a little over three weeks apart with no other identified communications or conduct certainly do not demonstrate persistent or frequent noncompliance with the FDCPA. Applying the relevant factors to the facts plaintiff alleges, an award of statutory damages in the amount of $500.00 is more than appropriate.

### 2. Attorney's Fees and Costs

With regard to the costs that plaintiff seeks—$400.00 for the cost of filing this action

and $75.00 for the service of the summons and complaint—it is found that plaintiff is entitled to an award of $475.00 in costs.

With regard to attorney's fees, Muldowney seeks attorney's fees for 9.9 hours[1] of legal work that Attorney Craig B. Sanders performed and 6.3 hours of legal work that Attorney David M. Barshay performed. In his declaration, Attorney Sanders states that "[a]ll of such time [for legal work] represents the necessary and reasonable efforts of Barshay Sanders, PLLC and was billed at the timekeepers' customary hourly rates [$450.00] and, to the best of [his] knowledge, information and belief, these rates are competitive with rates charged by other attorneys of like experience in the area for matters of this type." Sanders Decl. ¶ 16. In addition, in his Memorandum of Law, plaintiff acknowledges that the reasonable hourly rate is that rate used in the district where the District Court sits. He follows by noting that "'[r]ecent opinions issued by courts within the Eastern District of New York have found reasonable hourly rates to be approximately $300–$450 for partners, $200–$325 for senior associates, and $100–$200 for junior associates.'" Pl.'s Mem. of Law in Supp., Dkt No. 12–1, at 8 (quoting McMahon-Pitts v. Sokoloff, No. 15-CV-4975, 2017 WL 1011473, at *3 (E.D.N.Y. Mar. 15, 2017) (collecting cases)). Muldowney submits that the reasonable hourly rate in this case should be $450.00 for partners, $350.00 for senior associates, $250.00 for junior associates, and $100.00 for paralegals.

First, plaintiff is reminded that this case is being litigated in the *Northern* District of New York. Furthermore, he fails to mention that, in September 2018, in a case similar to this

---

[1] In additional to his work as a lawyer, Attorney Sanders contends that he personally performed some administrative/paralegal tasks and has "reclassified those entries at a paralegal rate of $100 per hour, rather than at [his] customary rate for FDCPA matters of $450 per hour as a managing partner in [his] firm." Sanders Decl. ¶ 10. Accordingly, he submits records detailing 9 hours of work at the attorney rate of $450.00 and 0.9 hours of work at the paralegal rate of $100.00.

one involving a motion for default judgment in an FDCPA case, Senior United States District Judge Frederick J. Scullin determined that "[b]ased on the rates that courts in this District have awarded and in light of the straightforward legal and factual issues involved in this case, the Court finds that the prevailing hourly rate for experienced counsel in an FDCPA case in this District is $250.00."  Davis-Fisk v. Overton, Russell, Doerr & Donovan, LLP, No. 1:17-CV-1047, 2018 WL 4509489, at *7 (N.D.N.Y. Sept. 19, 2018) (Scullin, S.J.).  In his analysis, Senior District Judge Scullin considered the forum rule and the factors used to determine what a reasonable client would pay.  Id. at 6–7.  There is no basis on which to now depart from his recent determination that $250.00/hour is an appropriate rate.  Moreover, given the relative skill level and experience of a paralegal compared to that of an experienced attorney at an hourly rate of $250.00, $50.00 is a reasonable prevailing hourly rate for a paralegal in this District.  See, e.g., Langhorne v. Takhar Grp. Collection Servs., Ltd., No. 13-CV-231, 2016 WL 1177980, at *2 (W.D.N.Y. Mar. 28, 2016) ("The court finds the number of hours and the hourly rates ($300 per hour for experienced attorney and $50 per hour for paralegal) to be reasonable, given the prevailing market rates in this district for FDCPA cases in the recent past.")

Applying this hourly rate, plaintiff is awarded a total of $3,870.00 in attorney's fees, comprised of $2,295.00 for Attorney Sanders' 9 hours of legal work as an attorney ($250.00/hour) and .09 hours of work as a paralegal ($50.00/hour) and $1,575.00 for Attorney Barshay's 6.3 hours of legal work as an attorney ($250.00/hour).

### IV. CONCLUSION

After carefully reviewing plaintiff's submissions and the applicable law, and for the reasons stated, plaintiff has established his entitlement to default judgment for a sum certain.

Therefore, it is

ORDERED that

1. Plaintiff's motion for default judgment is GRANTED;

2. Damages are awarded in the following amount:

|  |  |  |
|---|---|---|
| a. | Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) | $500.00; |
| b. | Costs pursuant to 15 U.S.C. § 1692k(a)(3) | $475.00; |
| c. | Attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) | $3,870.00 |
| | **TOTAL** | **$4,845.00** |

3. Plaintiff shall personally serve a copy of this Memorandum-Decision and Order on defendant at its following place of business:

Merit Recovery Systems, Inc.
Basile Rowe
Suite 6501-A
East Syracuse, New York 13057

4. Plaintiff shall file an Affidavit of Service indicating that personal service of this Memorandum-Decision and Order on defendant was effected; and

5. The Clerk enter judgment in favor of plaintiff and close this case.

IT IS SO ORDERED.

United States District Judge

Dated: May 8, 2019
    Utica, New York.